1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7          SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA OCAMPO,<br><br>                          Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>WESLEY PETONAK,<br><br>                          Defendants.<br><br>_____<br><br><br>WESLEY PETONAK,<br><br>                  Third-Party Plaintiff,<br><br>v.<br><br>STARR WRIGHT INSURANCE<br>AGENCY, INC., a Delaware corporation;<br>STARR SURPLUS LINES INSURANCE<br>CO., a Delaware corporation; STARR-<br>WRIGHT USA, a Delaware corporation;<br>STARR ADJUSTMENT SERVICES,<br>INC., a Delaware corporation; STARR<br>WRIGHT RISK PURCHASING GROUP,<br>LLC, a Delaware limited liability<br>corporation,<br><br>                  Third-Party Defendants. | Case No.:  3:18-cv-01012-JAH-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING THIRD-PARTY DEFENDANT STARR SURPLUS LINES INSURANCE CO.'S MOTION TO DISMISS THE THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IN THE FIRST AMENDED THIRD-PARTY COMPLAINT [ECF NO. 51];**<br><br>**(2) GRANTING THIRD-PARTY DEFENDANTS STARR WRIGHT INSURANCE AGENCY, INC., STARR WRIGHT USA, STARR ADJUSTMENT SERVICES, INC., AND STARR WRIGHT RISK PURCHASING GROUP, LLC'S MOTION TO DISMISS THE FIRST AMENDED THIRD-PARTY COMPLAINT [ECF NO. 52]; AND**<br><br>**(3) GRANTING IN PART AND DENYING IN PART THIRD-PARTY PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE FIRST AMENDED THIRD-PARTY COMPLAINT [ECF NO. 60].** |

**INTRODUCTION**

Pending before the Court are the following three motions: (1) Third-Party Defendant Starr Surplus Lines Insurance Co.'s ("Starr Surplus" or "the insurer") motion to dismiss the third cause of action for breach of fiduciary duty in the first amended third-party complaint; (2) Third-Party Defendants Starr Wright Insurance Agency, Inc. ("Starr Wright Insurance"), Starr-Wright USA, Starr Adjustment Services, Inc. ("Starr Adjustment"), and Starr Wright Risk Purchasing Group, LLC's ("Starr Wright Risk") (collectively, "Non-Insurer Third-Party Defendants") motion to dismiss the first amended third-party complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) Third-Party Plaintiff Wesley Petonak's ("Petonak") motion for leave to amend the first amended third-party complaint. (ECF Nos. 51, 52, 60).  The motions have been fully briefed by the parties.

After careful consideration of the parties' arguments and the applicable law, and for the reasons set forth below, the Court **GRANTS** Starr Surplus' motion to dismiss ("Starr Surplus MTD", ECF No. 51); **GRANTS** Non-Insurer Third-Party Defendants' motion to dismiss ("Non-Insurer MTD", ECF No. 52); and **GRANTS IN PART** and **DENIES IN PART** Petonak's motion to amend ("Petonak Mot.", ECF No. 60).

**BACKGROUND**

**I.  Ocampo's Complaint**

On May 21, 2018, Plaintiff Felicia Ocampo ("Ocampo") filed a complaint pursuant to the Federal Tort Claims Act ("FTCA") against Defendant United States of America ("USA"), alleging negligence and assault by an unnamed agent of the United States Immigration and Customs Enforcement Division of the Department of Homeland Security. ("Ocampo Compl.", ECF No. 1).  The complaint alleges that on August 6, 2017, the agent brandished a gun and threatened to shoot Ocampo if she did not pull over while they were both driving on Interstate-15 in San Diego County.  (*Id.* at ¶ 7).  The complaint further alleges that after they pulled over, Ocampo asked the agent what he was doing, to which

the agent replied that "if Ocampo did not shut her mouth, he was going to put his gun in her mouth and shut it for her." (*Id.* at ¶ 8). After the agent took Ocampo's driver license and proof of insurance, he returned to Ocampo's vehicle and stated that Ocampo "was lucky" to get off without a citation. (*Id.* at ¶ 9). The agent then left the scene without identifying himself. (*Id.*) The agent was later identified as Homeland Security Investigations Agent Wesley Petonak. ("USA MTD", ECF No. 4-1 at 3).

On or about August 8, 2017, Ocampo reported the stop to California Highway Patrol ("CHP"). ("Petonak FAC", ECF No. 47 at ¶ 24). Following that report, CHP contacted the Department of Justice's Office of Professional Responsibility ("OPR") regarding Ocampo's report, and an OPR investigation ensued. (*Id.*) On August 9, 2017, Petonak provided this information to Third-Party Defendants by filing an insurance claim pursuant to a federal employee professional liability policy obtained on or about July 25, 2017. (*Id.* at ¶ 25). Third-Party Defendants initially determined there was coverage under the policy, but it was subject to Petonak's conduct being within the course and scope of his federal employment. (*Id.* at ¶¶ 16-17, 28). Accordingly, Third-Party Defendants referred Petonak to the law firm of Brownell Landrigan, P.C. in Washington, D.C. to represent him in the OPR investigation. (*Id.* at ¶ 28). Brownell Landrigan assumed representation for the OPR investigation. (*Id.* at ¶ 29). Nearly a year later, on May 21, 2018, Ocampo filed the instant lawsuit.

On July 23, 2018, the USA filed a motion to dismiss for lack of subject matter jurisdiction on the ground that the FTCA's limited waiver of sovereign immunity does not apply to Ocampo's claims because Petonak was off-duty and not acting in the course and scope of his federal employment. (USA MTD at 2).[1] Within twenty-one days after receiving service of the motion, on August 10, 2018, Ocampo filed a first amended complaint, adding Petonak as a Defendant pursuant to *Bivens v. Six Unknown Narcotics*

---

[1] On the same day, the USA filed an amended motion to dismiss and withdrew the first motion because it inadvertently included Ocampo's home address. (ECF Nos. 4, 5).

*Agents*, 403 U.S. 388 (1971). ("Ocampo FAC", ECF No. 7 at ¶ 1). Accordingly, on August 15, 2018, the Court denied the USA's motion to dismiss as moot. (ECF No. 9).

On or about August 15, 2018, Petonak filed another insurance claim with Third-Party Defendants for coverage in relation to Ocampo's lawsuit. (Petonak FAC at ¶ 31). On or about August 20, 2018, Third-Party Defendants sent Petonak a letter stating that there is no coverage for the complaint under the policy and no further coverage for the OPR investigation because they found Petonak was acting outside the course and scope of his federal employment when he stopped Ocampo. (*Id.* at ¶ 32-33).[2]

## II.   Petonak's Third-Party Complaint

On November 9, 2018, Petonak filed a third-party complaint against Starr Surplus, Starr Wright Insurance, Starr-Wright USA, Starr Adjustment, and Starr Wright Risk (collectively, "Third-Party Defendants"), alleging breach of contract, insurance bad faith, breach of implied obligation of good faith and fair dealing, breach of fiduciary duty, and unreasonable failure to defend pursuant to California law. ("Petonak Compl.", ECF No. 24). The third-party complaint alleges, *inter alia*, that Third-Party Defendants failed to provide Petonak with legal representation in both Ocampo's lawsuit and in the OPR investigation pursuant to the federal employee professional liability policy. (*Id.*)

On February 6, 2019, Petonak was served with a notice of proposed removal from federal service from the ICE Discipline and Adverse Action Panel ("DAAP"). ("Damiani Decl.", ECF No. 60-1 at ¶ 16). Petonak was then removed from his position on April 18, 2019. (*Id.* at ¶ 18).

On May 17, 2019, Non-Insurer Third-Party Defendants filed a motion to dismiss the third-party complaint for lack of personal jurisdiction or, in the alternative, for failure to

---

[2]   On September 24, 2018, and October 26, 2018, the USA and Petonak filed answers to Ocampo's first amended complaint, respectively. (ECF Nos. 14, 21). The case ultimately settled, and the Court granted the parties' joint motion to dismiss with prejudice on June 12, 2019. (ECF Nos. 48, 49).

state a claim upon which relief can be granted.  (ECF No. 44).  Separately, on the same day, Starr Surplus filed a motion to dismiss and strike the second and fifth causes of action in the third-party complaint for insurance bad faith and unreasonable failure to defend. (ECF No. 45).

On May 20, 2019, Petonak filed an appeal of removal from his position to the United States Merit Systems Protection Board ("MSPB").  (Damiani Decl. at ¶ 19).

Within twenty-one days after service of the motions to dismiss, on June 7, 2019, Petonak filed an amended third-party complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) against Third-Party Defendants for breach of contract, breach of implied obligation of good faith and fair dealing, and breach of fiduciary duty.[3]  (Petonak FAC at 1).  Accordingly, on June 7, 2019, the Court ordered the Third-Party Defendants' motions to dismiss Petonak's initial third-party complaint withdrawn without prejudice. (ECF No. 50).

On June 21, 2019, Non-Insurer Third-Party Defendants filed a motion to dismiss Petonak's first amended third-party complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Non-Insurer MTD).  Separately, on the same day, Starr Surplus filed a motion to dismiss the third cause of action for breach of fiduciary duty in the first amended third-party complaint.  (Starr Surplus MTD).  On August 12, 2019, Petonak filed oppositions to the motions.  ("Opp'n to Starr Surplus MTD", ECF No. 53; "Opp'n to Non-Insurer MTD", ECF No. 54).  On August 19, 2019, Third-Party Defendants replied.  ("Starr Surplus Reply", ECF No. 55; "Non-Insurer Reply", ECF No. 56).

In February 2020, the MSPB appeal proceedings concluded.  (Damiani Decl. at ¶

---

[3] Petonak's first amended third-party complaint omitted the insurance bad faith and unreasonable failure to defend causes of action from the original third-party complaint. (*Compare* ECF No. 24, *with* ECF No. 47).

20).   Petonak then prepared a proposed second amended third-party complaint adding allegations against Third-Party Defendants for failure to provide him with defense or indemnification relating to the DAAP removal and MSPB appeal proceedings.   (*Id.* at ¶ 21; "Petonak's Proposed SAC", ECF No. 60-2 at 11-25).   On September 10, 2020, the parties met and conferred on the proposed edits, to no avail.   (Damiani Decl. at ¶ 22).

On December 15, 2020, Petonak filed a motion for leave to amend the first amended third-party complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).   (Petonak Mot.).   On January 20, 2021, Third-Party Defendants filed an opposition.   ("Opp'n to Petonak Mot.", ECF No. 62).   On February 3, 2021, Petonak replied.   ("Reply", ECF No. 63).

## DISCUSSION

**I.    Non-Insurer Third-Party Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

Non-Insurer Third-Party Defendants argue Petonak's first amended third-party complaint should be dismissed as jurisdiction cannot be established.   (Non-Insurer MTD at 10-18).   Specifically, Non-Insurer Third-Party Defendants argue this Court does not have either general or specific personal jurisdiction over them,[4] as they are not incorporated in or have their principal place of business in California, nor have they purposefully availed themselves of the benefits and protections of California law.   (*Id.*)   Non-Insurer Third-Party Defendants additionally argue that an alter ego or agency theory does not remedy the personal jurisdiction defect, as they are not alter egos of one another or Starr Surplus, and the actions of an insurer's agents are attributable to the insurer alone for purposes of personal jurisdiction.   (*Id.*)

In his opposition, Petonak fails to address the issue of general jurisdiction.   The Court construes his failure to do so as an abandonment of that particular claim and therefore

---

[4] Third-Party Defendant Starr Surplus does not challenge jurisdiction in the Third-Party Complaint.

will not analyze the existence of general jurisdiction. *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09-cv-04198, 2010 WL 841669, at *6 n.2 (N.D. Cal. 2010) (citing *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss an "abandonment of those claims."). The Court's discussion will therefore be limited to the question of whether specific personal jurisdiction exists as pled by Petonak. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) ("A state may assert either general or specific jurisdiction over a nonresident defendant.").

### A.   Legal Standard

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The demonstration of jurisdiction requires that Plaintiff "make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). "[U]ncontroverted allegations in the complaint must be taken as true," *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citations omitted).

District courts have the power to exercise personal jurisdiction to the extent authorized by the law of the state in which they sit. Fed. R. Civ. Proc. (4)(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute authorizes personal jurisdiction coextensive with the Due Process Clause of the United States Constitution, (*see* Cal. Civ. Code § 410.10), this Court may exercise personal jurisdiction over a nonresident defendant when that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*,

374 F.3d at 801 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The contacts must be of such a quality and nature that defendant could reasonably expect "being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

**B.   Analysis**

This Court follows the Ninth Circuit's three-prong test for analyzing specific jurisdiction over a defendant:

> "Specific" jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privilege of conducting activities within the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003) (quoting *Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). Where plaintiff has made a prima facie showing as to the first two prongs of the specific personal jurisdiction test, jurisdiction will be considered to be "*presumptively reasonable.*" *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) (emphasis in original). Defendant must then present compelling circumstances to rebut the presumption. *Id.*

The first prong necessary to establish specific personal jurisdiction "includes both purposeful availment and purposeful direction. This prong may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Depending on the nature of the cause of action, courts treat this first prong differently. In cases arising from tort, courts "typically inquire whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (citing *Schwarzenegger*, 374 F.3d at 803 (internal citation omitted)). Conversely, in cases arising from contract disputes, courts "typically inquire whether a defendant 'purposefully

avails itself of the privilege of conducting activities' . . . in the forum, focusing on activities such as . . . executing a contract." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).   In this case, Petonak alleges claims against all five Third-Party Defendants for breach of contract, breach of implied obligation of good faith and fair dealing, and breach of fiduciary duty. (*See* Petonak FAC).  Petonak's tort claims arise out of the alleged breach of contract claim. Thus, a purposeful availment analysis is appropriate. *See Schwarzenegger*, 374 F.3d at 802.

"Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470-72 (1985).  "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher*, 911 F.2d at 1362).  The business activities must "'reach out beyond one state and create continuing relationships and obligations[.]'" *Id.* at 1017 (quoting *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)).  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connections with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285-86 (2014) (citing *Burger King Corp.*, 471 U.S. at 478).  Thus, courts "look[] to the defendant's contacts with the forum State itself, not the defendant's contact with persons who reside there." *Id.* at 285 (citing *Int'l Shoe Co.*, 326 U.S. at 319).  These requirements "must be met as to each defendant over whom a . . . court exercises jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 268 (2017) (internal quotations and citations omitted).

Here, Petonak alleges this Court has personal jurisdiction over each Third-Party Defendant based on their individual and joint contacts with California.  (Petonak FAC at ¶¶ 2-4).  Specifically, Petonak alleges the Third-Party Defendants had continuous contacts

and connections, as they communicated regarding the Policy via mail, phone, and email, made administrative and coverage decisions related to Petonak's insurance claim, and collected premiums. (*Id.*; Opp'n to Non-Insurer MTD at 10-12). Petonak asserts that this activity was expressly aimed or targeted to California residents, and the harm occurred in California. (Opp'n to Non-Insurer MTD at 11). Petonak also supports personal jurisdiction under an agency and alter ego theory. (Petonak FAC at ¶ 4; Opp'n to Non-Insurer MTD at 14-15).

First, Petonak alleges Starr Wright Insurance is a Delaware corporation with its principal place of business in Wilmington, Delaware. (Petonak FAC at ¶ 7). Starr-Wright USA is also a Delaware corporation with its principal place of business in Atlanta, Georgia. (*Id.* at ¶ 9). Even though Petonak sued these two entities individually, he alleges they are the same entity because Starr-Wright USA is the "d/b/a/" of Starr Wright Insurance. (*Id.* at ¶¶ 13, 45). As such, they both participated in the processing of Petonak's claim and denial of coverage as the program administrators "responsible for administrative functions, receiving new claims, and issuing certificates to policy holders" in California. (*Id.*; Opp'n to Non-Insurer MTD at 11). In his opposition, Petonak alleges that there is a "substantial connection" between Starr Wright Insurance, Starr-Wright USA, and California because the communications between them and Petonak "were a fundamental part of the business relationship." (Opp'n to Non-Insurer MTD at 11-12). Petonak further alleges that Starr Wright Insurance's "purpose[] in the business relationship relied heavily on telephone and mail communications in order to fulfill their role, receive claims, issue certifications, and determine coverage." (*Id.*)

Petonak goes on to allege Starr Adjustment is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Petonak FAC at ¶ 10). Petonak alleges Starr Adjustment is the "claims-handling entity" that "evaluated the terms of the policy and made the decision to deny P[etonak]'s claim and coverage." (*Id.* at ¶¶ 13, 45, 59).

Lastly, Starr Wright Risk is a Delaware corporation with its principal place of business in Wilmington, Delaware. (*Id.* at ¶ 11). Petonak alleges Starr Wright Risk is the

master policyholder that was "responsible for approving any and all changes and waivers to the terms of the contracts with P[etonak]" and "routinely sen[t] information to the members" of the Federal Employee Risk Management Association. (*Id.* at ¶ 45; Opp'n to Non-Insurer MTD at 11).

Based on these allegations, the Court finds purposeful availment lacking as to each Non-Insurer Third-Party Defendant. Petonak fails to allege sufficient facts to demonstrate that any Non-Insurer Third-Party Defendant formed its own contacts in California by contracting business there. *Walden*, 571 U.S. at 284 ("[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State . . . the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.") (quoting *Burger King Corp.*, 471 U.S. at 475). Rather, the only alleged connection between Non-Insurer Third-Party Defendants and California is the contacts Starr Surplus or the Federal Employee Risk Management Association ("the Association") created with California via the contracts between Starr Surplus, Petonak, and other third parties.

Furthermore, there are no allegations that any Non-Insurer Third-Party Defendant affirmatively reached out to Petonak or any third party to transact business in California. *See Boschetto*, 539 F.3d at 1016-17. Instead, each Non-Insurer Third-Party Defendant's alleged connections with California are based on their contact and communication with people who reside there because of the relationships Starr Surplus and the Association formed with those people. *See Walden*, 571 U.S. at 285 ("'[M]inimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). In other words, the only connection between each Non-Insurer Third-Party Defendant and California is their relationships with other entities that contract to provide insurance services to people who live in California. As such, each Non-Insurer Third-Party Defendant's contacts with California are not attributable to their own independent actions but rather are based on the actions of Petonak, Starr Surplus, and other third parties. Thus, the Court finds these contacts are not of such a quality and nature that

each Non-Insurer Third-Party Defendant could reasonably expect "being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.  Consequently, the Court finds Petonak has not met his burden of demonstrating that jurisdiction is appropriate, as his allegations are insufficient to demonstrate purposeful availment by any Non-Insurer Third-Party Defendant. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law").

Furthermore, even accepting the allegations in the complaint as true, Petonak fails to adequately plead alter ego or agency theory.  As set forth in further detail, (*infra* Section II.C.), Petonak only makes conclusory allegations that "Third-Party Defendants are liable under the alter-ego theory. Third-Party Plaintiff is informed and believes and thereon alleges that Third-Party Defendants [Starr-Wright USA], [Starr Wright Insurance], [Starr Adjustment], [Starr Wright Risk], and [Starr Surplus] all share a unity of interest and ownership that the separate companies merge to form a single enterprise. To treat each Third-Party Defendant as separate would end in an inequitable result." (Petonak FAC ¶ 44).  Petonak's mere recitation of the elements is insufficient to establish an alter ego theory. *See Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971) ("Among the factors to be considered in applying the [alter ego] doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.").  Having held that Petonak does not adequately plead alter ego, the Court will not determine whether personal jurisdiction under agency theory exists.[5]

---

[5]  The Court notes that the Supreme Court has held that agency theory cannot be used as a means to establish general personal jurisdiction, but whether the theory can confer specific jurisdiction is undecided.  *See Daimler AG v. Bauman*, 571 U.S. 117, 134-35 (2014); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017).

In light of Petonak's failure to establish personal jurisdiction over the Non-Insurer Third-Party Defendants, the request for jurisdictional discovery is **DENIED**. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (In order to obtain discovery on jurisdictional facts, the plaintiff must at least make a "colorable" showing that the Court can exercise personal jurisdiction over the defendant). Non-Insurer Third-Party Defendant's motion to dismiss pursuant to Rule 12(b)(2) is **GRANTED**.

## II.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

### A.   Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal of a cause of action for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," she must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

(9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Upon determining that any deficiencies in the complaint may be cured by adding additional facts, the court should permit the party to amend the complaint. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.    Motions to Dismiss the Third Cause of Action for Breach of Fiduciary Duty [6]**

Both Starr Surplus and Non-Insurer Third-Party Defendants seek to dismiss the third cause of action for breach of fiduciary duty on the ground that the alleged insurer-insured relationship is not a fiduciary relationship as a matter of law and, therefore, Petonak failed to state a claim upon which relief can be granted.  (Starr Surplus MTD at 4-5; Non-Insurer MTD at 20-21).

---

[6]  The Court addresses both Starr Surplus' and Non-Insurer Third-Party Defendants' motions to dismiss the third cause of action for breach of fiduciary duty under this heading. The Court notes that the parties' arguments are the same. (*See* ECF Nos. 51, 52 at 20-22).

1    In response, Petonak argues that he has alleged sufficient facts to demonstrate a

2  fiduciary relationship and whether Third-Party Defendants had a fiduciary relationship

3  with Petonak is a question of material fact for the jury to decide.  (Opp'n to Starr Surplus

4  MTD at 5-8; Opp'n to Non-Insurer MTD at 13-14).  Petonak additionally argues that Starr

5  Surplus acted as an attorney-in-fact by providing administrative and management services

6  to the Federal Employee Risk Management Association, and therefore owed a fiduciary

7  duty to Petonak as a member of the Association.  (Opp'n to Starr Surplus MTD at 8-9).

8    Under California law, a cause of action for breach of fiduciary duty requires "the

9  existence of a fiduciary relationship, its breach, and damages proximately caused by that

10  breach." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).  The existence of a fiduciary

11  relationship is a question of law.  *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983)

12  ("[T]he court determines as a matter of law that a fiduciary relationship exists[.]").  As it

13  relates to the insurer-insured relationship, the California Supreme Court has specifically

14  held that no fiduciary relationship exists between an insurer and an insured as it "is not a

15  true 'fiduciary relationship' in the same sense as the relationship between trustee and

16  beneficiary, or attorney and client." *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th

17  1142, 1150-51 (2001).  Instead, the relationship between an insurer and an insured is

18  primarily contractual rather than fiduciary.  *See Gibson v. Gov't Emps. Ins. Co.*, 162 Cal.

19  App. 3d 441, 449-50 (1984) ("[A]ny fiduciary duty existing between an insurer and its

20  insured is governed by the terms of the insurance contract in effect between them[.]").  Due

21  to its contractual nature, the insurer-insured relationship is "characterized by unequal

22  bargaining power in which the insured must depend on the good faith and performance of

23  the insurer." *Vu*, 26 Cal. 4th at 1151 (citations omitted).  As such, an insurer "owes no

24  obligation to consider the interests of its insured above its own."  *Vill. Northridge

25  Homeowners Assn. v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 929 (2010) (quoting

26  *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973 (2003)).  California courts

27  "impose 'special and heightened' duties, but while these 'special' duties are akin to, and

28  often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise

because of the unique nature of the insurance contract, not because the insurer is a fiduciary." *Vu*, 26 Cal. 4th at 1151 (internal quotations and citations omitted). Thus, "an insurer's breach of its 'fiduciary-like duties' is adequately redressed by a claim for breach of the covenant of good faith and fair dealing implied in the insurance contract[,]" rather than a claim for breach of fiduciary duty. *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1211-12 (2002).

Petonak's argument that Third-Party Defendants owed him a fiduciary duty because they acted as his agents when they "took on the responsibility to defend him and provided him with attorneys," is unpersuasive. (Opp'n to Starr Surplus MTD at 7). Third-Party Defendants did not take on the responsibility to defend Petonak as he asserts—his attorneys did. (*See* Petonak FAC at ¶¶ 28-29 ("Third-Party Defendants . . . *referred* Petonak to Brownell Landrigan, P.C. in Washington, D.C. to represent him for the claim . . . *Brownell Landrigan assumed representation* for the OPR investigation.") (emphasis added)). Petonak's first amended third-party complaint does not allege any facts to support a finding that any Third-Party Defendant "knowingly undertook the obligations of a fiduciary" by "act[ing] on behalf and for the benefit of another." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008). Starr Surplus' actions of referring Petonak to defense attorneys and paying any legal bill that was subject to a later policy coverage determination on whether he was acting in the course and scope of his employment was within the normal course and scope of the insurer-insured relationship.[7]

While there is ample case law to support the proposition that an attorney hired by an insurer to defend an insured owes a fiduciary duty to the insured and the insurer, Petonak

---

[7] The insurance policy that is attached to the amended third-party complaint provides in relevant part: "Coverage B – Legal Defense Expense Coverage . . . the Insurer shall select counsel and pay Claims Expenses for a Claim arising out of any civil proceedings . . . made against the Insured . . . and which arises out of a Wrongful Act[,] . . . [which] shall mean any act, error, or omission . . . which directly relate to or arise out of the . . . Course and Scope of U.S. Federal Government Employment. (Insurance Policy at 5, 8).

does not cite, and the Court in not aware of, any case law to support the proposition that a fiduciary relationship is created between an insurer and the insured when an insurer hires counsel to defend the insured under a policy. *See, e.g., Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1406 (2002) ("[A]n attorney retained by an insurance company to defend its insured under the insurer's contractual obligation to do so represents and owes a fiduciary duty to both the insurer and insured."); *Bogard v. Emps. Cas. Co.*, 164 Cal. App. 3d 602, 609 (1985) ("The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured."). As such, the Court finds Starr Surplus' duties under the policy as the insurer to act in good faith in selecting counsel and paying claims expenses are "special and heightened duties" that arose "because of the unique nature of the insurance contract, not because the insurer is a fiduciary." *Vu*, 26 Cal. 4th at 1151. The alleged breach of those duties "is adequately redressed by a claim for breach of the covenant of good faith and fair dealing implied in the insurance contract[,]" not a claim for breach of fiduciary duty. *Tran*, 104 Cal. App. 4th at 1211-12.

In conclusory fashion, Petonak also states that the California Supreme Court has not yet ruled on whether there is a fiduciary relationship between an insurance broker and an insured. (Opp'n to Starr Surplus MTD at 8). An insurance broker "is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself[.]" *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal. App. 4th 1040, 1052 (2013) (quoting *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 929 (2004)). Petonak provides no information or support as to why Starr Surplus is an insurance broker and, in fact, the allegations in Petonak's complaint identifies Starr Surplus as the insurer that issued the policy, not as "a middleman between the insured and the insurer." (Petonak FAC at ¶¶ 13, 45).

Next, the Court turns to Petonak's argument that Starr Surplus breached its fiduciary

Case 3:18-cv-01012-JAH-BGS   Document 65   Filed 09/27/23   PageID.491   Page 18 of 31

duty to him as a member of the Federal Risk Management Association because Starr Surplus is the Association's attorney-in-fact.  Petonak points to the first page of the policy where the Insured is named as "Each Civilian Employee of the Federal Government of the United States who is a member of Federal Employee Risk Management Association…." and argues "to the extent [Starr Surplus] acted as an attorney-in-fact, providing administrative and management services to the Federal Employee Risk Management Association, it had a fiduciary duty to members of the Federal Employee Risk Management Association, which included Petonak."  (Opp'n to Starr Surplus MTD at 8) (capitalization normalized).

 Petonak cites *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202 (2003) for its holding that an attorney-in-fact owes the insured a limited fiduciary duty under a power of attorney.  However, Petonak's reliance on *Tran* is misplaced.  The *Tran* Court explained that an interinsurance exchange "is an unincorporated business organization made up of subscribers and managed by an attorney-in-fact.  The exchange is the insurer and the subscribers are the insureds.  The subscribers execute powers of attorney appointing the attorney-in-fact to act on their behalf.  The attorney-in-fact executes the exchange's insurance contracts." 104 Cal. App. 4th at 1210.  As such, an attorney-in-fact of an exchange who manages the business of the exchange may owe the insured a fiduciary duty under a power of attorney, which is strictly construed.  *Id.* at 1206-14.

Here, Petonak's first amended third-party complaint does not allege that the Association is an interinsurance exchange or that Petonak is a subscriber who executed a power of attorney to have Starr Surplus act on his behalf as an attorney-in-fact.  *See Delos v. Farmers Grp., Inc.*, 93 Cal.App.3d 642, 652 (1979) (noting that attorneys-in-fact, in the insurance context, are empowered in written underwriters' agreements).  Petonak's complaint does not contain any allegations regarding a separate agreement designating Starr Surplus as attorney-in-fact.  The Court finds the first amended third-party complaint deficient in this regard.

For the reasons discussed, the Court **GRANTS** both Starr Surplus' and Non-Insurer

18

3:18-cv-01012-JAH-BGS

Third-Party Defendants' motions to dismiss the third cause of action for breach of fiduciary duty **WITH PREJUDICE**.  (ECF Nos. 51, 52 at 20-22).  Accordingly, Petonak's request for leave to amend the claim for breach of fiduciary duty is **DENIED**.

## C. Non-Insurer Third-Party Defendants' Motion to Dismiss As Not Proper Parties

Non-Insurer Third-Party Defendants seek dismissal from Petonak's first amended third-party complaint because they are not the insurer and, thus, not proper parties to a breach of insurance contract and breach of obligation of good faith and fair dealing ("bad faith") claim.  (Non-Insurer MTD at 18-20).  They contend that the first amended third-party complaint is entirely based on alleged breaches of the policy and related alleged insurer duties, and Starr Surplus as the insurer is the only proper Third-Party Defendant. (*Id.*)

Petonak's first amended third-party complaint asserts claims against Non-Insurer Third-Party Defendants under theories of direct and vicarious liability, including alter ego and agency theories.  (Petonak FAC at ¶¶ 4, 13, 44-45, 58-59).  In his opposition, Petonak adds a third joint venture theory.  (Opp'n to Non-Insurer MTD at 12-13).  The Court addresses each theory in turn.[8]

### 1. Direct Liability

Petonak alleges that Non-Insurer Third-Party Defendants are directly liable for breach of contract and breach of the implied obligation of good faith and fair dealing because "[t]he contractual agreement is between [all] Third-Party Defendants and P[etonak.]"  (Petonak FAC at ¶ 42).

The essential elements of a contract under California law are (1) parties capable of

---

[8]  Because the Court grants Third-Party Defendants' motions to dismiss the third cause of action for breach of fiduciary duty, (*supra* Section II.B.), the Court only discusses the remaining two causes of action for breach of contract and breach of the implied obligation of good faith and fair dealing.

contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. Cal. Civ. Code § 1550. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City & Cnty. of San Francisco*, 225 Cal. App. 3d 38, 49 (1990).

Here, the first amended third-party complaint does not demonstrate the existence of a contractual relationship between Petonak and any Non-Insurer Third-Party Defendant. The only two bargaining parties identified in the contract are Petonak, as the insured, and Starr Surplus, as the insurer. (*See* "Insurance Policy", ECF No. 47-1 at 4 ("Throughout this Policy the words 'Insured' and 'you' refer to the Insured/Certificate Holder indicated in Item 1 a of the Declarations to this Policy. The words "Insurer" and "we" refer to Starr Surplus Lines Insurance Company providing this insurance.")). Furthermore, Starr Surplus is the only Third-Party Defendant that signed the policy as the contracting party, (Insurance Policy at 15-16, 18-19), and Petonak does not allege or point to any provision in the policy evidencing that any of the Non-Insurer Third-Party Defendants consented to being parties to the contract. Indeed, Petonak acknowledges the "lack of contractual privity" between the parties in his opposition. (*See* Opp'n to Non-Insurer MTD at 13) ("D[efendants] were at all times aware of the contract and the terms it contained, and *despite the lack of contractual privity*, they were bound to deal fairly with P[etonak]'s claim.") (emphasis added)).

Thus, the Court finds Petonak fails to state a cause of action for breach of contract against any Non-Insurer Third-Party Defendant under a theory of direct liability, as the first amended third-party complaint does not allege sufficient facts to demonstrate they were parties to the insurance contract. Petonak also fails to state a cause of action for breach of the implied obligation of good faith and fair dealing against any Non-Insurer Third-Party Defendant because there is no contractual relationship between them. *See Smith*, 225 Cal. App. 3d at 49.

/ / /

1

2. <u>Alter Ego</u>

2

3

Next, Petonak alleges that Non-Insurer Third-Party Defendants are the alter egos of each other and Starr Surplus.  (Petonak FAC at ¶¶ 4, 44-45, 59).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985)).  To find any Non-Insurer Third-Party Defendant to be each other's and Starr Surplus' alter ego, Petonak must make out a prima facie case showing "(1) that there is such unity of interest and ownership that the separate personalities of [Starr Surplus and Non-Insurer Third-Party Defendants] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)).  Both elements must be met before the Court can make an alter ego finding. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  The determination of alter ego liability is a question of fact.  *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1071-72 (2011) (citing *Alexander v. Abbey of the Chimes*, 104 Cal. App. 3d 39, 46 (1980).

18

19

20

21

22

23

24

25

26

27

28

In making a determination as to the first element, California courts have relied on a number of factors, including but not limited to the following: commingling of assets; failure to segregate funds of the separate entities; unauthorized diversion of corporate funds or assets to other than corporate uses; failure to maintain minutes or adequate corporate records; the confusion of the records of the separate entities; identical equitable ownership of the entities; the identification of the equitable owners thereof with the domination and control of the entities; use of the same office or business location; employment of the same employees and/or attorney; inadequate capitalization; the total absence of corporate assets; use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation; disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and the formation and

use of a corporation to transfer to it the existing liability of another entity. *See Associated Vendors, Inc.*, 210 Cal. App. 2d at 838-40 (internal quotations and citations omitted); *see also Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538-39 (2000); *Williams v. Progressive Cnty. Mut. Ins. Co.*, No. 17-CV-2282-AJB-BGS, 2019 WL 1434241, *2-3 (S.D. Cal. Mar. 29, 2019).

Here, Petonak's first amended third-party complaint is devoid of the requisite factual allegations needed to support alter ego liability. Petonak alleges Third-Party Defendants are liable under the alter-ego doctrine because they "all share a unity of interest and ownership that the separate companies merge to form a single enterprise. To treat each Third-Party Defendant as separate would end in an inequitable result." (Petonak FAC at ¶ 44). Petonak further alleges Non-Insurer Third Party Defendants shared in the financial gains from Petonak's policy. (*Id.* at ¶ 45). Specifically, Starr Wright Risk is the master policyholder responsible for approving all changes and waivers to the terms of the policy. (*Id.* at ¶¶ 13, 45). Starr Adjustment is the claims handling entity that interpreted and evaluated the terms of the policy, as well as made and communicated the decision to deny Petonak's claim. (*Id.*) Starr Wright Insurance and Starr-Wright USA are the same entity because Starr-Wright USA is the "d/b/a/" of Starr Wright Insurance. (*Id.*) As such, they both participated in the processing of Petonak's claim and denial of coverage as the program administrators responsible for administrative functions, receiving new claims, and issuing certificates to policy holders. (*Id.*)

While these alleged facts might indicate some shared interest among Non-Insurer Third-Party Defendants by financially benefiting from the roles they assumed in the execution of the policy and the handling of the claims, they are not sufficient to make out a prima facie case that there is such a unity of interest *and* ownership between the entities that their separate personalities do not exist. For instance, there are no facts in the first amended third-party complaint alleging that they commingle assets, have the same employees or attorneys, share ownership, use the same office, or that their separate corporate identities exist as mere instrumentalities of Starr Surplus. Nor does Petonak

allege facts to show that failure to disregard their separate corporate identities would result in fraud or injustice.  Without such facts supporting both elements of the alter ego doctrine, it cannot be invoked. *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.  Consequently, the Court concludes that the allegations in the first amended third-party complaint do not satisfy either element of the alter ego doctrine.  As a result, the Court finds that Petonak fails to state a cause of action for breach of contract and breach of the implied obligation of good faith and fair dealing against any Non-Insurer Third-Party Defendant based on alter ego liability.

### 3. Agency

In contrast to his allegations that Third-Party Defendants are alter egos of each other, Petonak alleges Non-Insurer Third-Party Defendants acted as the agents of "the other defendants."  (Petonak FAC at ¶ 13).

Agency is a legal and consensual relationship in which an agent acts on behalf of and is subject to the control of a principal. *Am. Airlines, Inc. v. Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018) (citing *Edwards v. Freeman*, 34 Cal. 2d 589, 591-92 (1949)).  To demonstrate an agency relationship, Petonak "must make a prima facie showing that the subsidiary represents the parent corporation by performing services sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (internal quotations and citations omitted).  Liability may be attributed to a parent corporation "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities[.]" *Sonora Diamond Corp.*, 83 Cal. App. 4th at 541.  "Control is the key characteristic of the agent/principal relationship." *Id*. (citing *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1292–1296 (1992).  Thus, "[i]n the absence of the essential characteristic of the right of control, there is no true agency[.]" *Edwards*, 34 Cal. 2d at 592.

Here, Petonak's first amended third-party complaint does not identify which Third-Party Defendant is the principal, the agent, the parent corporation, or the subsidiary.  Nor does Petonak allege that any Third-Party Defendant exercised control over another Third-Party Defendant.  Petonak merely alleges that each Non-Insurer Third-Party Defendant "acted as the agent of the other defendants" in describing the various roles each of them played in the claims handling process.  (Petonak FAC at ¶ 13).  Without more facts, the allegations contained in the first amended third-party complaint are insufficient to demonstrate an agency relationship.  Thus, the Court finds that Petonak fails to state a cause of action for breach of contract and bad faith against any Non-Insurer Third-Party Defendant based on an agency theory.

4. <u>Joint Venture</u>

In his opposition, Petonak argues that Third-Party Defendants were engaged in a joint venture. (Opp'n to Non-Insurer MTD at 12-13).  However, joint venture is not alleged in Petonak's first amended third-party complaint.[9]  (*See* Petonak FAC).  In considering a motion to dismiss for failure to state a claim, the Court may only consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Fed. R. Civ. P. 12(b)(6); *Lee*, 250 F.3d at 688-89.  Thus, even assuming these additional allegations may constitute grounds to state a claim for breach of contract and bad faith against any Non-Insurer Third-Party Defendant, they cannot be considered when raised for the first time in opposition to a motion to dismiss. *Id.*

For the reasons discussed above, the Court finds that Petonak has not sufficiently plead causes of action for breach of contract and breach of the implied obligation of good faith and fair dealing against Non-Insurer Third-Party Defendants based on direct or

---

[9]  Nor is joint venture alleged in the proposed second amended third-party complaint that is attached to Petonak's pending motion for leave to amend the first amended third-party complaint.  (*See* ECF Nos. 60, 60-2 at 11-25).

vicarious liability.  Thus, the Court **GRANTS** Non-Insurer Third-Party Defendants Rule 12(b)(6) motion to dismiss.  (ECF No. 52-1 at 18-20).  The Court also **GRANTS** Petonak's request for leave to amend.  (Opp'n to Non-Insurer MTD at 16).

## III.  Petonak's Motion for Leave to File a Second Amended Third-Party Complaint

Petonak seeks leave to amend the first amended third-party complaint to include additional facts and allegations regarding Third-Party Defendants' failure to provide him with defense in, or indemnification for, the DAAP removal process and MSPB appeal, and to claim attorney's fees and costs incurred in connection with those proceedings.  (Petonak Mot. at 1-2, 6-8).  The proposed amendments do not seek to add any new causes of action.

In response, Third-Party Defendants argue that Petonak's motion should be denied based on undue delay and futility.  (*See* Opp'n to Petonak Mot.).

### A.  Legal Standard

According to Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within twenty-one days of service of a motion under Rule 12(b). Otherwise, a party must obtain leave of the court or written consent from the adverse party to amend. Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1061 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).

The Supreme Court has instructed lower courts to heed the language of Rule 15(a) to grant leave freely when justice requires. *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir. 1973).  Because Rule 15(a) mandates that leave to amend should be freely given when justice so requires, the rule is to be interpreted with "extreme liberality." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981).

Granting leave to amend rests in the sound discretion of the trial court. *International Ass'n of Machinists & Aerospace Workers v. Republic Airlines,* 761 F.2d 1386, 1390 (9th Cir. 1985).  This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits. *DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987).  Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v.*

*Abbott Laboratories,* 127 F.R.D. 529 (N.D. Cal. 1989).

However, even though leave to amend is generally granted freely, it is not granted automatically. *See Zivkovic v. Southern Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir.2002). Four factors are considered in determining whether to allow amendment of a pleading: (1) prejudice to the opposing party; (2) undue delay; (3) bad faith; and (4) futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Yakama Indian Nation v. State of Wash. Dept. of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999); *DCD Programs,* 833 F.2d at 186. These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend. *DCD Programs,* 833 F.2d at 186; *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). Futility of amendment, however, can justify denial of leave to amend, regardless of whether other factors are applicable. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A proposed amended pleading is futile if it would not be considered a legally sufficient pleading based upon the same standard found in Federal Rule of Civil Procedure 12(b)(6). *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

The single most important factor is whether prejudice would result to the nonmovant as a consequence of the amendment. *See Eminence Capital, LLC*, 316 F.3d at 1052; *see also William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1053 (9th Cir. 1981). The responding party bears the burden of demonstrating prejudice. *DCD Programs*, 883 F.2d at 187. When the responding party fails to demonstrate prejudice and there lacks a strong showing of any other factor, trial courts are presumed to grant leave to amend. *Eminence Capital, LLC*, 316 F.3d at 1052 (internal citation omitted); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).

**B.  Analysis**

### 1.  Undue Delay

Third-Party Defendants argue that "Petonak did not adequately explain the delay" in alleging facts related to the DAAP removal process and MSPB appeal, as those matters were known to him when he first amended his third-party complaint as of right. (Opp'n to

Petonak Mot. at 6). Third-Party Defendants rely on a number of cases for the proposition that leave to amend should be denied based on undue delay when the moving party either knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original or first amended complaint without a valid explanation. (*Id.* at 23-26).

In response, Petonak explains that his proposed amendments seek to update the existing causes of action with facts and damages that have occurred since the filing of the first amended third-party complaint. (Reply at 5). Petonak notes that in all but one of the cases cited by Third-Party Defendants, a district court case in the district of South Dakota, *Waldner v. North American Truck & Trailer, Inc.*, 277 F.R.D. 401, 418 (D.S.D. 2011), the moving party sought to add additional causes of action, and the court found prejudice to the opposing party. (*Id.* at 4-5). Furthermore, in *Waldner*, the plaintiff did not file a motion seeking leave to amend, which was required under the local rules. (Reply at 4-5). The Court notes that Petonak added a joint venture theory in opposition to the motion to dismiss but does not include the theory in his proposed second amended complaint. Petonak argues that leave to amend should not be denied based on undue delay because the case is still in the early stages of litigation, the parties have not completed their initial disclosures or conducted formal discovery, and there is no bad faith, dilatory motive, or prejudice to Third-Party Defendants. (*Id.*)

"Undue delay," for purposes of determining whether to grant a motion for leave to amend a pleading, "is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012) (internal quotations and citations omitted). Relevant to evaluating undue delay is (1) whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading, (2) the length of the delay measured from the time the moving party obtained relevant facts, (3) whether discovery has closed, and (4) proximity to the trial date. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (internal quotations and citations omitted); *see also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794,

798-99 (9th Cir. 1991) (internal quotations and citations omitted).

Here, Third-Party Defendants do not argue any delay-related prejudice, nor is there any evidence that Petonak's delay in seeking to add DAAP removal and MSPB appeal-related facts to the complaint until after the MSPB proceedings concluded is prejudicial. The MSPB appeal concluded after the filing of the first amended third-party complaint and after Third-Party Defendants filed their motions to dismiss. Petonak alleges that the DAAP removal and MSPB appeal proceedings were covered by his insurance policy and Third-Party Defendants failed to provide coverage. Such facts are material to the case as the insurance policy which is attached to the complaint may be interpreted to provide for expenses incurred in connection with the claims arising from Ocampo's allegations.

Furthermore, there is no allegation that Petonak's motion was made in bad faith or for dilatory reasons. The mere fact that Petonak could have moved at an earlier time to amend does not constitute an adequate basis for denying leave to amend. *See Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973). As Petonak points out, this case is still in its early stages of litigation. The parties have not completed their initial disclosures or conducted formal discovery. No trial date has been set, and the Court vacated all the pretrial dates reflected in the Court's scheduling order on joint motion of the parties. For these reasons, the Court concludes that the "undue delay" factor favors granting leave to amend and granting leave to amend would not impose "unwarranted burdens on the court." *See Davis*, 901 F. Supp. 2d at 1212.

### 2. Futility

Third-Party Defendants also argue that Petonak's motion should be denied based on futility because the proposed second amended third-party complaint includes the same fundamental defects as the first amended third-party complaint that are the subject of the pending motions to dismiss. (Opp'n to Petonak Mot. at 6, 11-22). Specifically, Third-Party Defendants argue that Petonak did not propose any amendments (1) curing the alleged lack of personal jurisdiction over Non-Insurer Third-Party Defendants, (2) making Non-Insurer Third-Party Defendants proper parties to the action for alleged breach of

28

duties allegedly owed by the insurer, Starr Surplus, (3) establishing a fiduciary relationship for a breach of fiduciary duty cause of action, and (4) alleging that he tendered the DAAP and MSPB matters to Third-Party Defendants for a defense under the insurance policy. (*Id.*)

As previously discussed, Petonak alleges that the DAAP removal and MSPB appeal proceedings were covered by his insurance policy and Third-Party Defendants failed to provide coverage. Such facts are germane to the case and particularly relevant to the breach of contract cause of action, as the insurance policy which is attached to the complaint may be interpreted to provide for expenses incurred in connection with the claims arising from Ocampo's allegations. The Court agrees with Petonak's argument that after tendering two claims relating to the OPR investigation and Ocampo's lawsuit, Third-Party Defendants made it clear they would not provide coverage for anything related to Ocampo's allegations in their letter of August 20, 2018, because he was acting outside the course and scope of his employment. (Reply at 3-4; Petonak FAC at ¶¶ 32-33 (August 20 letter stating, "there is no coverage for the complaint under [Petonak's] Policy and it appears that there is no further coverage *connected to* the OPR investigation as well." (emphasis added)). At that point, tendering a third claim arising out of Ocampo's allegations would have been futile. Petonak's removal by DAAP was directly "connected to" the OPR investigation initiated by Ocampo's allegations, and the MSPB appeal was the result of Petonak's removal. (Reply at 4). Thus, the Court finds that the futility factor favors granting leave to amend to add facts related to the DAAP and MSPB matters.

However, the Court finds that Petonak's proposed second amended third-party complaint that is attached to his motion for leave to amend does not cure the deficiencies discussed above relating to lack of personal jurisdiction and failure to state claims against Non-Insurer Third-Party Defendants. Thus, for the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Petonak's motion for leave to amend. The Court **GRANTS** Petonak's motion for leave to amend to add additional facts and allegations regarding the DAAP and MSPB matters. The Court **DENIES** Petonak's motion

for leave to amend to file the proposed second amended third-party complaint that is attached to his motion. (*See* ECF No. 60-2 at 10-25). Petonak may file a second amended third-party complaint that comports with this Order **within forty-five (45) days of the date of this Order.**

## CONCLUSION AND ORDER

For the foregoing reasons IT IS HEREBY ORDERED:

1.  The Court **GRANTS** the motions to dismiss the third cause of action for breach of fiduciary duty in the first amended third-party complaint filed by Starr Surplus and Non-Insurer Third-Party Defendants **WITH PREJUDICE**, (ECF No. 51; ECF No. 52 at 20-22), and **DENIES** Petonak's request for leave to amend the third cause of action for breach of fiduciary duty.

2.  The Court **GRANTS** Non-Insurer Third-Party Defendants' motion to dismiss the first amended third-party complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 52). The Court **DENIES** Petonak's request for jurisdictional discovery. However, the Court **GRANTS** Petonak's request for leave to amend to add additional facts and allegations relating to alter ego, agency, and joint venture, but not direct liability of Non-Insurer Third-Party Defendants.

3.  The Court **GRANTS IN PART** and **DENIES IN PART** Petonak's motion for leave to amend the first amended third-party complaint (ECF No. 60). The Court **GRANTS** Petonak's motion for leave to amend to add additional facts and allegations regarding the DAAP and MSPB matters. However, the Court **DENIES** Petonak's motion for leave to amend to file the proposed second amended third-party complaint that is

/ / /

/ / /

/ / /

attached to his motion.  (*See* ECF No. 60-2 at 10-25).  Petonak may file a second amended third-party complaint that comports with this Order **within forty-five (45) days of the date of this Order**.

     **IT IS SO ORDERED.**

DATED:  September 27, 2023

 

 

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE